## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT A. HILBORN** | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:CV-06-0223** |
| | : | **(JUDGE VANASKIE)** |
| **ROBERT C. CORDARO et al.,** | : | |
| **Defendants** | : | |
| | : | |

## MEMORANDUM

On March 31, 2004, Plaintiff Robert A. Hilborn received written notice that he had been suspended without pay from his position as Deputy Warden of the Lackawanna County Prison "[a]s a result of the pending criminal charges . . . ." It is undisputed that criminal charges were filed against Mr. Hilborn on March 30, 2004. He brought this action on January 27, 2006, at which time criminal charges against him were still pending. Mr. Hilborn asserts that as a result of his suspension, he had, "in effect, been constructively discharged" without "proper notice of the charges for his termination, or the opportunity for a hearing." (Compl., Dkt. Entry 1, ¶¶ 32-33.) He also asserts a claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, arising out of the failure to receive appropriate information when he applied for and took leave for medical reasons at the end of January, 2004.

Before the Court is the Motion to Dismiss filed by Defendants Robert C. Cordaro, A.J. Munchak, Randy A. Castellani, County of Lackawanna ("County"), Paul L. Jennings, James T. Wynder Jr., Andrew J. Jarbola, Honorable Chester T. Harhut, John Mellow, John Szymanski,

the Lackawanna County Prison Broad ("Prison Board"), and Anthony Bernardi.[1]  (Dkt. Entry 12.)

Among other issues, Defendants assert that Plaintiff's due process claim fails because he did

not have a protected property interest in his employment, and his FMLA claim fails because he

was not harmed by the absence of notice of his FMLA rights as required by statute and

regulations.  Finding merit in these arguments, the Court will grant Defendants' motion to

dismiss.[2]

## I. BACKGROUND

### A. Factual Background

Mr. Hilborn worked for the County for approximately twenty-nine (29) years, most

recently as the Deputy Warden of the Prison.[3]  (Am. Compl., Dkt. Entry 5, ¶ 23.)  On January

28, 2004, Mr. Hilborn submitted a written application for FMLA leave to Defendant Wynder, the

interim warden of the Prison.  (Id. ¶ 25.)  At the time of the request, Mr. Hilborn had been

employed as Deputy Warden for at least 1,250 hours during the preceding twelve (12) months.

(Id. ¶ 27(a).)  Mr. Hilborn included a certification from his doctor, Joseph F. Philbin, M.D., that

---

[1]The individual Defendants are sued in their official and individual capacities.  (Am. Compl., Dkt. Entry 5, ¶ 18.)

[2]The Court has jurisdiction over Mr. Hilborn's federal constitutional and FMLA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2), and jurisdiction over his state constitutional claim pursuant to 28 U.S.C. § 1367(a).

[3]The County has approximately 1,100 employees, of which 160 work at the Prison. (Am. Compl. ¶¶ 20-21.)  The County, therefore, is an "employer" under the FMLA.  See 29 U.S.C. § 2611(4)(A)(i), (iii); id. § 2611(4)(B).

indicated Mr. Hilborn had been diagnosed with a serious medical condition rendering him incapable of performing his job duties.  (Id. ¶¶ 26, 27(c).)  Mr. Hilborn never received a response to his FMLA leave request from Defendant Wynder or anyone else.  (Id. ¶ 28.) Despite the lack of a response, Mr. Hilborn took leave on or about January 28, 2004.  (See id. ¶ 23 (stating that Mr. Hilborn worked for the County through January 28, 2004).)

On March 31, 2004, Mr. Hilborn was notified that he was suspended without pay.  (Id. ¶ 29.)  The notice, written by Defendant Jennings – the warden of the Prison – and dated March 30, 2004, stated:

> As a result of the pending criminal charges, you have been suspended without pay.  Therefore, I am requesting that any and all county property/issue be returned to the prison through your attorney.  Additionally, I extend an offer to collect any of your valuables presently at the prison, again through the services of your attorney.
>
> If so desired, please have [your attorney] contact this office to arrange for both the return of county property/issue and the removal of any of your personal items.

(Id.)[4]  Mr. Hilborn was advised further that, because of the suspension and consequent loss of benefits, he could obtain medical coverage through COBRA.  (Id. ¶ 32.)  Mr. Hilborn was not afforded a hearing before or after the suspension.  (Id. ¶ 35.)

At the time he filed the Amended Complaint on February 17, 2006, Mr. Hilborn's

---

[4]A copy of the notice was sent to the individual Defendants (except Defendant Wynder) and the County solicitor.  (Am. Compl. ¶ 29.)

employment status with the County was unresolved.  (Id. ¶ 30.)  In his brief in opposition to

Defendants' Motion to Dismiss, Mr. Hilborn represents that he "pled guilty and [was] sentenced

on October 18, 2006, presumably for the criminal acts that were the basis for his suspension."

(Pl.'s Br. Resp. Defs.' Mot. Dismiss, Dkt. Entry 27, at 4.)[5]  At no time has a hearing been held in

connection with Mr. Hilborn's removal from the position of Deputy Warden.

Mr. Hilborn's Amended Complaint asserts that he "enjoyed a constitutionally protected

interest in his County government position under the County Charter/Administrative Code, the

Collective Bargaining Agreement."  (Am. Compl. ¶ 39.)  The County and the American

Federation of State, County, and Municipal Employees ("AFSCME")[6] entered into a collective

bargaining agreement ("CBA") that governed the "wages, hours, and other terms and conditions

of employment for all regular full-time and regular part-time employees employed by the County

at the [Prison]."  (CBA, Ex. A. to Defs.' Br. Supp. Mot. Dismiss, Dkt. Entry 15-2, at 1.)[7]  Among

---

[5]Although Plaintiff's counsel asserted that Plaintiff pled guilty, it appears that he actually pled nolo contendere to one of the two charges filed against him, and the other charge was nol prossed.  Court of Common Pleas Web Docket Sheets, Commonwealth v. Hilborn, No. CP-35-CR-0001650-2004 (Lackawanna County), http://ujsportal.pacourts.us/WebDocketSheets/OtherCriteria.aspx  (for last name enter "Hilborn"; for first name enter "Robert"; for county select "Lackawanna"; for docket type select "Criminal"; after clicking "search," select Docket Number "CP-35-CR-0001650-2004") (last visited Sept. 28, 2007).

[6]AFSCME is the exclusive representative of Prison employees for purposes of collective bargaining.  (CBA, Ex. A. to Defs.' Br. Supp. Mot. Dismiss, Dkt. Entry 15-2, at 1.)

[7]The CBA was attached as an exhibit to Defendants' brief in support of their motion to dismiss, but was not an exhibit to the Amended Complaint.  As will be explained below, the

other things, the CBA requires "just cause" to discipline employees and provides a grievance procedure to appeal disciplinary action.  (Id. at 31-34.)

The grievance procedure consists of three steps.  First, the employee or the union must present a written grievance to the warden within ten (10) calendar days of the disciplinary decision.  (Id. at 32.)  If the employee is dissatisfied with the warden's decision, he may appeal to the County commissioners within five (5) calendar days.  (Id. at 32-33.)  If the employee disagrees with the commissioners' decision, he has the right, through the union, to submit the grievance to arbitration.  (Id. at 33.)  The arbitrator's decision is final and binding on all parties. (Id. at 34.)

As Deputy Warden, Mr. Hilborn was excluded from the CBA's coverage: "The bargaining unit . . . excludes the . . . Deputy Warden . . . ."  (Id. at 1.)  He was, however, required to pay a "fair share" fee to AFSCME.  (Am. Compl. ¶ 24.)

In this regard, the CBA was negotiated by AFSCME, but it covers all employees within the bargaining unit, whether they are members or non-members of AFSCME.  The members pay dues to AFSCME, while non-members pay a "fair share" fee, which equals "the regular membership dues required of members of the Union less the costs for the previous fiscal year of the Union's activities and undertakings which were not reasonably employed to implement or

---

CBA is an "undisputably authentic" document on which Mr. Hilborn's procedural due process claims are based, and therefore may be considered in deciding Defendants' motion to dismiss.

effectuate the duties of the Union as the exclusive representative of the members." (CBA, at 4-5.)  See also 43 Pa. Stat. Ann. § 1102.2 (defining "fair share fee").   A fair share fee compensates the labor union for its representation of the non-member employees in collective bargaining with the employer.  The union dues and fair share fees are deducted from the employees' pay by the employer and then remitted to the union. (CBA, at 4-5.)  Pennsylvania law authorizes the payment of a fair share fee by non-members to a union when a fair share fee is provided for in the collective bargaining agreement.  43 Pa. Stat. Ann. § 1102.3.  The CBA requires non-members to pay a fair share fee to AFSCME.  (See CBA, at 5.)

### B. Procedural Background

Mr. Hilborn commenced this litigation by filing a Complaint in this Court on January 27, 2006.  (Dkt. Entry 1.)  He filed an Amended Complaint as of right on February 17, 2006.  (Dkt. Entry 5.)  See Fed. R. Civ. P. 15(a).  The Amended Complaint consists of three counts.  In Count I, Mr. Hilborn asserts a claim under 42 U.S.C. § 1983, alleging that all Defendants – individual and governmental – violated the Fourteenth Amendment to the United States Constitution by removing him from employment without a pre- or post-termination hearing.  He also alleges that his suspension violated the Pennsylvania Constitution.  In Count II, Mr. Hilborn asserts a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978), against the County and Prison Board in connection with the procedural due process claim.  In Count III, he asserts a claim under 42 U.S.C. § 1983 and the FMLA on the ground that Defendants

violated the FMLA by failing to advise Mr. Hilborn of his FMLA rights in response to his January 28, 2004, request for leave.

On April 25, 2006, Defendants moved to dismiss the Amended Complaint.  (Dkt. Entry 12.)  Mr. Hilborn was granted several extensions of time within which to file an opposition brief due to the pendency of the criminal charges.  He finally filed his opposition brief on December 18, 2006.  Defendants' reply brief was filed on January 8, 2007.  The matter is ripe for disposition.

## II. DISCUSSION

### A. Standard for Rule 12(b)(6) Motion to Dismiss

The standard for deciding a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted" is well-settled.  The Court must accept all well-pled facts of the complaint as true, as well as all reasonable inferences drawn therefrom.  Javorski v. Nationwide Mut. Ins. Co., Civ. A. No. 3:06-CV-1071, 2006 WL 2225851, at *7 (M.D. Pa. Aug. 2, 2006).  A motion to dismiss under Rule 12(b)(6) should be granted only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Id. at *6 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The moving party bears the burden to establish the absence of an actionable claim.  Id. at *7 (citing Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980)).

In deciding a motion to dismiss, the Court may consider allegations in the complaint,

7

exhibits attached thereto, and public records.  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Furthermore, "'a court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"  Rossman v. Fleet Bank (R.I.) Nat'l Ass'n, 280 F.3d 384, 388 n.4 (3d Cir. 2002) (quoting White Consol. Indus., 998 F.2d at 1196).  "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'"  Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).

Here, Defendants rely on parts of the CBA in moving for dismissal of the Amended Complaint.  Mr. Hilborn did not attach the CBA as an exhibit to his Amended Complaint, but the CBA is integral to and explicitly relied upon in the Amended Complaint as a basis for Mr. Hilborn's assertion of a constitutionally protected property interest in his employment as Deputy Warden.  (See Am. Compl. ¶ 39 ("Plaintiff enjoyed a constitutionally protected interest in his County government position under the . . . Collective Bargaining Agreement.").)  Moreover, Mr. Hilborn does not contest the authenticity of the CBA that Defendants attached to their brief in support of their motion to dismiss.  Therefore, the Court will consider the CBA in deciding this motion to dismiss.  See Majewski v. Luzerne County, No. 3:05-CV-2396, 2007 WL 1074769, at *18-19 (M.D. Pa. Apr. 9, 2007) (court considered collective bargaining agreement attached as an exhibit to defendants' motion to dismiss).

8

B. **Procedural Due Process**

Mr. Hilborn claims he had a constitutionally protected property interest in continued employment as Deputy Warden of the Prison.  He claims that his position was covered by the CBA, which required just cause to discipline employees.  He alleges that the suspension without pay deprived him of this property interest, and that he was entitled to a pre- and/or post-deprivation hearing to challenge the suspension.

Defendants argue that Mr. Hilborn had no constitutionally protected property interest because the CBA excluded the Deputy Warden from its protections.  Thus, assert Defendants, Mr. Hilborn was an at-will employee who could be disciplined summarily.  Moreover, Defendants argue that even if the CBA applied to Mr. Hilborn, his claims still fail because the CBA provided a grievance procedure that satisfied due process requirements.

The Fourteenth Amendment to the United States Constitution, in part, provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.[8]  "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and

---

[8]In Pennsylvania, procedural due process is guaranteed by section 1 of the Declaration of Rights.  See Pa. Const. art I, § 1 ("All men . . . have certain inherent and indefeasible rights, among which are . . . acquiring, possessing and protecting property . . . ."); Millcreek Manor v. Dep't of Pub. Welfare, 796 A.2d 1020, 1028 (Pa. Commw. Ct. 2002).

(2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).

"To have a property interest in a job, . . . a person must have more than a unilateral expectation of continued employment; rather, [h]e must have a legitimate entitlement to such continued employment." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  In this regard, "state law determines whether such a property interest exists." Id.  In Pennsylvania, public employees are employees-at-will who serve at the pleasure of their employers and are subject to summary dismissal "unless the legislature explicitly confers tenure as an integral part of a comprehensive governmental employment scheme." Davenport v. Reed, 785 A.2d 1058, 1062-63 (Pa. Commw. Ct. 2001) (citing Stumpp v. Stroudsburg Mun. Auth., 658 A.2d 333, 334-35 (Pa. 1995)); see also Scott v. Phila. Parking Auth., 166 A.2d 278, 281 (Pa. 1960).  It is axiomatic that at-will employees have no legitimate entitlement to continued employment.  See Elmore, 399 F.3d at 282.  Therefore, unless Mr. Hilborn can overcome the general rule that public employees in Pennsylvania are at-will employees, he has no property interest worthy of constitutional protection.

Mr. Hilborn contends that the CBA created a legitimate entitlement to continued employment.  The Pennsylvania legislature has empowered local governments to enter into collective bargaining agreements that govern the terms and conditions of employment, such as requiring "just cause" to discipline employees.  See 43 Pa. Stat. Ann. § 1101.701; see also

Davenport, 785 A.2d at 1063 n.4 (observing that the Public Employe Relations Act, 43 Pa. Stat. Ann. §§ 1101.101 to 1101.2301, is an example of legislation that explicitly confers tenure on public employees).  Here, the CBA prohibits the County from disciplining Prison employees without just cause.  That said, the CBA expressly excludes the Deputy Warden from the bargaining unit.  (See CBA, at 1 ("The bargaining unit . . . excludes the . . . Deputy Warden . . . .").)  Because Mr. Hilborn was not covered by the CBA, he could not benefit from the "just cause" provision.  Stated otherwise, the CBA did nothing to alter Mr. Hilborn's status as an at-will employee subject to summary discipline.  Therefore, Mr. Hilborn had no property interest in continued employment as Deputy Warden, and his procedural due process claims fail.[9]  See

---

[9]In the Amended Complaint, Mr. Hilborn also alleged that the "County Charter/Administrative Code" created a constitutionally protected property interest in his employment as Deputy Warden.  (Am. Compl. ¶ 39.)  He failed, however, to pursue this contention in his opposition brief.  While there is thus no need to address the issue, see Gass v. Virgin Islands Tel. Co., 311 F.3d 237, 246 (3d Cir. 2002) (failure to raise issue in district court waives the argument), the Court has nonetheless considered the matter and determined that the County Home Rule Charter does not create a property interest in Mr. Hilborn's employment as Deputy Warden.  The Lackawanna County Home Rule Charter does not restrict the County's ability to discipline an employee, but merely requires that "[a]ll dismissals, demotions, or suspension[s] shall be in writing with the reason for dismissal, demotion, or suspension stated therein."  335 Pa. Code § 1.14-1401(b).  The Home Rule Charter does provide that "[a]ny employe dismissed, demoted[,] or suspended for disciplinary reason shall be entitled to a hearing before an independent review board . . . ."  Id.  That Mr. Hilborn was entitled to a written explanation why he was suspended and a hearing before an independent review board, however, does not create a reasonable expectation that he could be disciplined only for just cause.  See Nearhood v. City of Altoona, 705 A.2d 1363, 1365-66 (Pa. Commw. Ct. 1998) (interpreting similar language contained in former 53 Pa. Stat. Ann. § 1-822 (recodified at 53 Pa. Cons. Stat. Ann. § 3060) as not creating an expectation of continued employment), app. denied, 725 A.2d 1224 (Pa. 1998).  In this regard, it bears observation that a local government

Connor v. Clinton County Prison, 963 F. Supp. 442, 445-46 (M.D. Pa. 1997) (where the collective bargaining agreement did not cover plaintiff's former position as secretary/records clerk, she was an at-will employee without a legitimate entitlement to continued employment).

Mr. Hilborn alleges that he was required to pay the fair share fee to AFSCME.  As explained above, the fair share fee is paid to a public employee union by non-member employees in return for union representation in collective bargaining with the employer.  The collective bargaining agreement covers members and non-members of the union, provided they are included within the bargaining unit.  Accepting this allegation as true, and setting aside the CBA's express exclusion of the Deputy Warden from the bargaining unit, Mr. Hilborn may have been covered by the CBA and benefited from the proviso that employees could be disciplined only for just cause, thereby creating a legitimate entitlement to continued employment.

Assuming this to be true, Mr. Hilborn's due process claims still fail because the grievance procedure of the CBA satisfies due process requirements.  In Dykes v. Southeastern Pennsylvania Transportation Authority, our Court of Appeals observed that "[w]here a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, . . . those procedures satisfy due process requirements."  68 F.3d 1564, 1571 (3d Cir.

_____

in Pennsylvania cannot create a protected property interest in public employment absent express legislative authority to do so.  See Elmore, 399 F.3d at 282-83.  Plaintiff has not cited any such express legislative authority to grant his employment protected status outside the collective bargaining context.

1995) (quoting Jackson v. Temple Univ., 721 F.2d 931, 933 (3d Cir. 1983)); accord Armstrong

v. Meyers, 964 F.2d 948, 950-51 (9th Cir. 1992).

Here, the grievance procedure of the CBA provided Mr. Hilborn adequate post-

deprivation due process.[10]  Mr. Hilborn was notified immediately of the decision to suspend him

without pay "as a result of the pending criminal charges."  He could have appealed the decision

to suspend him without pay to the warden and the County commissioners, and if dissatisfied,

he had the right, through AFSCME, to demand binding arbitration of the dispute.  See

Majewski, 2007 WL 1074769, at *21-22 (holding grievance and arbitration procedure similar to

the procedures of the CBA comport with due process); Solomon v. Phila. Hous. Auth., No. Civ.

A. 02-CV-6630, 2004 WL 1427140, at *4 (E.D. Pa. June 18, 2004) (same).  That he elected not

to avail himself of the grievance procedure is inconsequential.[11]  As the Seventh Circuit

observed, "a state cannot be held to have violated due process requirements when it has made

procedural protection available and the plaintiff has simply refused to avail himself of them."

---

[10]Due process does not require a pre-deprivation hearing in order to suspend a tenured
employee without pay because of pending criminal charges.  See Gilbert v. Homar, 520 U.S.
924, 932-34 (1997).

[11]Mr. Hilborn complains that his employment status was never definitively resolved,
leaving uncertainty as to when to commence the grievance process.  The uncertainty, however,
is plainly attributable to the protracted pendency of the criminal charges.  Moreover, there is no
doubt that the March 30, 2004, suspension without pay was grievable.  To the extent that
Plaintiff premises his property interest in his job on the CBA, he could have invoked its
grievance process within the appropriate number of days after he asserts that he was
constructively discharged.  In the Amended Complaint, Plaintiff alleges that he was
constructively discharged effective March 30, 2004.  (Am. Compl. ¶ 33.)

Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982); see also Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (plaintiff may not supplant the grievance procedure with a federal civil rights lawsuit).  Significantly, Mr. Hilborn makes no allegation that the grievance procedure of the CBA was "unavailable or patently inadequate."  Alvin, 227 F.3d at 116.  Because the CBA provided adequate due process, Mr. Hilborn cannot present a viable due process claim.

In summary, Mr. Hilborn had no property interest in continued employment as Deputy Warden.  To the extent that the CBA may have conferred a property interest, the CBA provided a grievance procedure that satisfied due process requirements.  Moreover, because Mr. Hilborn has not stated a constitutional violation, he cannot maintain a Monell claim against the government entities.  See Godshalk v. Borough of Bangor, No. Civ. A. 03-1465, 2004 WL 999546, at *15 (E.D. Pa. May 5, 2004).  Consequently, Defendants' motion to dismiss Counts I and II of the Amended Complaint will be granted.[12]

## C. FMLA

In Count III of the Amended Complaint, Mr. Hilborn alleges Defendants denied him benefits he was otherwise entitled to under the FMLA.[13]  Mr. Hilborn submitted a written request

---

[12]Because the "due process standards of the United States and Pennsylvania Constitutions are essentially the same," City of Phila. v. Pa. Ins. Dep't, 889 A.2d 664, 670 (Pa. Commw. Ct. 2005) (footnotes omitted), it necessarily follows that Mr. Hilborn fails to state a claim under the Pennsylvania Constitution.

[13]Mr. Hilborn appears to assert his cause of action under both the FMLA itself as well as under 42 U.S.C. § 1983.  As this Court held in Kilvitis v. County of Luzerne, 52 F. Supp. 2d 403, 419 (M.D. Pa. 1999), "the FMLA provides a comprehensive remedial measur[e] that evinces

to Defendant Wynder for FMLA leave on January 28, 2004.  The request included a certification from his physician that he was diagnosed with a serious medical condition rendering him incapable of performing his job duties.  Mr. Hilborn never received a response from Defendant Wynder or anyone else advising him of his FMLA rights or approving or disapproving his FMLA request.  Nevertheless, Mr. Hilborn went on leave from January 28, 2004, to March 31, 2004, the date he was notified of his suspension.

In enacting the FMLA, Congress found there to be "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods."  29 U.S.C. § 2601(a)(4).  The FMLA provides employees an entitlement "to take reasonable leave for medical reasons."  Id. § 2601(b)(2).  In this regard, employees are "entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of [his or her] position."  Id. § 2612(a)(1)(D).  Moreover, an employee returning from leave shall be restored to the same or equivalent position held by the employee when the leave started and shall retain all employment benefits accrued prior to the leave.  Id. § 2614(a)(1)-(2).

Courts recognize two causes of action to redress an employer's violation of the FMLA. Bearley v. Friendly Ice Cream Corp., 322 F. Supp. 2d 563, 570 (M.D. Pa. 2004).  First, an

---

Congress' intent to foreclose the use of a § 1983 action."  Therefore, Mr. Hilborn can seek redress for the alleged violations of the FMLA only through the remedies afforded under the FMLA.

employee may assert an interference claim under 29 U.S.C. § 2615(a)(1), which prohibits employers from interfering with, restraining, or denying the exercise of FMLA rights.  Id. at 570-71; see also 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(b).  Second, an employee may assert a retaliation claim under 29 U.S.C. § 2615(a)(2) or § 2615(b), which prohibits employers from discriminating against employees who oppose the employer's unlawful practices or who participate in proceedings to enforce FMLA rights.  Bearley, 322 F. Supp. 2d at 571; see also 29 U.S.C. § 2615(a)(2), (b).

In this matter, Mr. Hilborn purports to assert an interference claim.  He alleges that Defendants violated the FMLA by failing to respond to his January 28, 2004, request for FMLA leave.  He asserts that Defendants' inaction denied him FMLA benefits, but fails to identify any benefits he was denied or allege that he was prejudiced by Defendants' failure to reply to his leave request.  Defendants contend the absence of harm is fatal to Mr. Hilborn's claim.[14]

To assert an interference claim, Mr. Hilborn must allege that "'that he was entitled to benefits under the FMLA and that he was denied them.'"  Sommer v. The Vanguard Group, 461

---

[14]Defendants also contend that dismissal of Mr. Hilborn's FMLA claim is warranted because he failed to allege which provision of the FMLA was violated or entitles him to relief. (Defs.' Br. Supp. Mot. Dismiss, Dkt. Entry 15, at 23-24 (citing Tronetti v. TLC HealthNet Lakeshore Hosp., No. 03-CV-0375E(SC), 2003 WL 22757935, at *5 (W.D.N.Y. Sept. 26, 2003); Keene v. Thompson, 232 F. Supp. 2d 574, 584 (M.D.N.C. 2002)).)  Although Mr. Hilborn did not identify the specific statutory or regulatory provision(s) violated by Defendants, it is clear from the Amended Complaint that his claim arises from Defendants' alleged failure to advise him of his FMLA rights in response to his January 28, 2004, request.  (See Am. Compl. ¶ 36.)

F.3d 397, 399 (3d Cir. 2006) (quoting Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir.

2005)).  An employer interferes with the exercise of FMLA rights by refusing to authorize FMLA

leave or denying other benefits or by "discouraging an employee from using such leave."  29

C.F.R. § 825.220(b).  An employer discourages an employee from taking FMLA leave by

pressuring the employee to take leave at another time, see Williams v. Shenango, Inc., 986 F.

Supp. 309, 320-21 (W.D. Pa. 1997), by proposing the employee work from home instead of

taking FMLA leave, see Butler v. IntraCare Hosp. N., Civ. A. No. H-05-2854, 2006 WL

2868942, at *4 (N.D. Tex. Oct. 4, 2006), or by criticizing an employee for taking too much

FMLA leave.  See Grosso v. Fed. Express Corp., 467 F. Supp. 2d 449, 464 (E.D. Pa. 2006).  In

other words, an employer must act affirmatively in order to "discourag[e] an employee from

using [FMLA] leave."

        Here, Mr. Hilborn alleges he was an eligible employee entitled to FMLA benefits, (see

Am. Compl. ¶ 27); see also 29 U.S.C. § 2611(2)(A) (defining "eligible employee"), but there is

no allegation that he was denied leave or that he was discouraged from taking FMLA leave.

Mr. Hilborn alleges only that Defendants did not respond to his FMLA request; he concedes

that Defendants did not deny him FMLA benefits.  (See Pl.'s Br. Resp. Defs.' Mot. Dismiss, Dkt.

Entry 27, at 6 ("When Mr. Hilborn requested FMLA leave on January 28, 2004, . . . he was

neither approved or denied the federally created employment benefit.") (emphasis added).)

See also Alifano v. Merck & Co., Inc., 175 F. Supp. 2d 792, 794 (E.D. Pa. 2001) (observing that

an interference claim requires an actual injury, i.e., forfeiture of FMLA rights).  At best, the

Amended Complaint reveals that Defendants failed to advise Mr. Hilborn of his FMLA rights.

To be sure, an employer is obligated under Department of Labor regulations to respond

to an employee's request for FMLA leave by notifying the employee of his FMLA rights, see 29

C.F.R. § 825.208(a); id. § 825.301(b)-(c),[15] and failure to comply constitutes interference with

FMLA rights.  See id. § 825.220(b) ("Any violations of the [FMLA] or of these regulations

constitute interfering with, restraining, or denying the exercise of rights provided by the

[FMLA].").  The requirement of notice, however, is not itself a substantive right, but rather a

means to facilitate an employee's informed exercise of his or her FMLA rights.  Thus, courts

have determined that an employer's failure to respond to an employee's request for leave,

without a showing of actual harm, is insufficient to state an FMLA interference claim.

In Dodgens v. Kent Manufacturing Co., 955 F. Supp. 560, 563, 564 (D.S.C. 1997), the

plaintiff took six weeks of medical leave in connection with knee surgery, retained his

_____

[15]In this regard, "it is the employer's responsibility to designate leave . . . as FMLA-
qualifying, and to give notice of the designation to the employee . . . ."  29 C.F.R. § 825.208(a).
In addition, the employer shall "provide the employee with written notice detailing the specific
expectations and obligations of the employee and explaining any consequences of a failure to
meet these obligations."  29 C.F.R. § 825.301(b)(1).  The notice shall advise the employee that,
inter alia, "the leave will be counted against the employee's annual FMLA leave entitlement," id.
§ 825.301(b)(1)(i), and the employee's right to be restored to the same or equivalent position
when he returns from leave.  Id. § 825.301(b)(1)(vii).  The written notice is to be furnished the
first time an employee gives notice of his need for FMLA leave and within a reasonable time
after such notice is given – "within one or two business days if feasible."  Id. § 825.301(c).

employment benefits while on leave, and was restored to his pre-leave position.  Nonetheless,

he sued his employer, claiming it interfered with his FMLA rights by "fail[ing] to inform [plaintiff]

of his FMLA leave rights when a request for leave was made."  Id. at 564.  The employer

conceded, and the court concluded, that the employer violated the FMLA.  Id.  The court

granted summary judgment to the employer, however, reasoning that the employer's technical

violation did not injure the plaintiff, who received all the FMLA benefits to which he was entitled.

Id. at 564-65.  See also Kent v. Md. Transp. Auth., Civ. No. CCB-06-2351, 2006 WL 3931648,

at *4 (D. Md. Dec. 21, 2006) (granting motion to dismiss where plaintiff did not allege she was

prejudiced by substantial delay in responding to her request for leave); Reifer v. Colonial

Intermediate Unit 20, 462 F. Supp. 2d 621, 638 (M.D. Pa. 2006) (though defendant never

advised plaintiff of her FMLA rights after she requested leave, summary judgment granted

because plaintiff did not establish prejudice as a result).

     An identical conclusion is compelled in the matter sub judice.  Mr. Hilborn alleges that

Defendants never responded to his request for FMLA leave, an allegation this Court accepts as

true.  Yet, he does not allege how he was prejudiced by Defendants' violation of the FMLA.  Mr.

Hilborn was on leave from January 28, 2004, until March 31, 2004, when he received notice of

his suspension, and there is no allegation that the failure to provide notice deprived him of

"wages, salary, employment benefits, or other compensation," or that it caused "any actual

monetary losses."  See 29 U.S.C. § 2617(a)(1)(A)(i).  Accordingly, the Amended Complaint fails

to state an interference claim under the FMLA, and Defendants' motion to dismiss will be granted.

## III. **CONCLUSION**

For the reasons stated, Defendants' Motion to Dismiss will be granted, and Mr. Hilborn's Amended Complaint shall be dismissed.  An appropriate Order follows.


**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT A. HILBORN** | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:CV-06-0223** |
| | : | **(JUDGE VANASKIE)** |
| **ROBERT C. CORDARO et al.,** | : | |
| **Defendants** | : | |
| | : | |

## ORDER

**NOW, THIS 28th DAY OF SEPTEMBER, 2007,** for the reasons set forth in the

foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss (Dkt. Entry 12) is **GRANTED.**

2. Plaintiff's Amended Complaint (Dkt. Entry 5) is **DISMISSED.**

3. The Clerk of Court shall mark this action **CLOSED.**


<u>**s/ Thomas I. Vanaskie**</u>
Thomas I. Vanaskie
United States District Judge